UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **BRIAN R ZELENAK** | **CASE NO.  2:24-CV-01803** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **BEAUREGARD ELECTRIC COOPERATIVE INC ET AL** | **MAGISTRATE JUDGE LEBLANC** |

MEMORANDUM RULING

Before the court is a Motion to Dismiss and/or Motion for More Definite Statement [doc. 11] filed, respectively, under Federal Rules of Civil Procedure 12(b)(6) and 12(e) by defendant Beauregard Electric Cooperative, Inc. ("BECi"). Defendants Thomas Cryar, J.R. Hickman, and Douglas Sonnier have also filed a Motion to Dismiss and/or Motion for More Definite Statement [doc. 27] adopting and incorporating by reference BECi's motion. *See* doc. 30. Plaintiff Brian Zelenak opposes the motions. Doc. 32.

I.
BACKGROUND

This suit arises from plaintiff's employment with BECi, a regional utility cooperative located in Southwest Louisiana. BECi is governed by a nine-member Board of Directors, which included at all relevant times defendants Cryar, Sonnier, and Hickman. Doc. 1, ¶ 20. The directors are elected by the constituents of their respective districts. *Id.* at ¶ 21. BECi first hired plaintiff as a consultant in August 2023. *Id.* at ¶ 5. The following month, after the departure of BECi's general manager Kevin Turner, plaintiff assumed the

role of interim general manager for the cooperative.[1] *Id.* at ¶¶ 31–33. On December 14, 2023, the Board voted to make plaintiff's position permanent. *Id.* at ¶ 35. Cryar, who had made Facebook posts criticizing plaintiff's performance a few days prior, voted against the hire along with the other two defendant directors, Hickman and Sonnier. *Id.* at ¶¶ 34, 36.

Plaintiff and BECi executed a two-year management contract on January 2, 2024, under which plaintiff would receive an annual base salary of $320,000.00. *Id.* at ¶ 37; *see* doc. 1, att. 2. The contract also provided that it could only be terminated for cause, requiring a vote of two-thirds of the board members, or death or disability. Doc. 1, att. 2, p. 2.

At the next board meeting on January 11, plaintiff presented a list of allegations in executive session. *Id.* at ¶ 39. He also advised the board that he received information from retired employees who were interested in speaking up about actions taken by current and previous board members. *Id.* In response the board retained outside counsel to investigate potential misconduct by board members. *Id.* at ¶ 40.

At a March 2024 board meeting, BECi released the results of the misconduct investigation in an executive session. *Id.* at ¶ 55. The investigative team opined that although "no criminal activity or theft was revealed, certain directors exercised undue influence or exhibited an abuse of power by interfering with the Cooperative's day-to-day operations." *Id.* at ¶ 55. BECi issued a press release on March 14, 2024, revealing some of the findings and describing its commitment to restoring trust. *Id.* at ¶ 59. It did not,

---

[1] Plaintiff alleges that Turner had previously announced his intention to retire, and that he (plaintiff) had applied for the anticipated vacancy in the spring of 2023. Doc. 1, ¶¶ 25, 32. Plaintiff further alleges that he was offered the position in August 2023, though Turner had not yet determined his retirement date, but that plaintiff declined the offer due to obligations to his aging mother. *Id.*

however, produce a copy of the underlying report for review or comment. *Id.* The following day, local news station KPLC requested a copy of the report. *Id.* at ¶ 60.

After the executive session at the April board meeting, the board also announced its decision to place plaintiff on a paid, 45-day administrative leave. *Id.* at ¶ 63. Plaintiff then encouraged meeting attendees to request a copy of the investigative report. *Id.* at ¶ 67. After plaintiff left the meeting, the board voted to take plaintiff off of the accounts and undo several of the changes he had made. *Id.* at ¶ 68. The board also appointed its former general manager, who was present for the meeting, as interim general manager. *Id.* at ¶ 69. Later that month, KPLC ran a story on the investigative report and provided a link to the investigation memorandum. *Id.* at ¶ 70.

In May 2024, while on administrative leave, plaintiff filed an IRS Form 13909 outlining the submission of false information by various BECi officials, including Cryar, Hickman, and Turner.[2] *Id.* at ¶ 72. Plaintiff had previously made the board aware of all the allegations in this submission and had documented these concerns in the Auditor's Annual Report and Letter to the Cooperative, which the board had received on or about March 23, 2024. *Id.* Meanwhile, the Public Service Commission opened an investigation into BECi that month under LPSC Docket No. X-37183, *In re: Investigative Audit into the Beauregard Electric Cooperative, Inc. and its Board of Directors regarding potential violations of its policies, practices, and/or procedures that could cause costs and/or service impacts*. *Id.* at ¶ 73.

---

[2] Plaintiff alleges that, when board members reported their hours for 2023, Hickman submitted hours in excess of what he could have reasonably logged even working full time. *Id.* at ¶¶ 49–50.

In June 2024, plaintiff participated in an investigative interview with outside counsel. *Id.* at ¶¶ 76–77. Outside counsel then prepared a report for the board, highlighting different alleged violations of BECi policies by plaintiff. *Id.* at ¶ 78. Plaintiff was terminated on the basis of these violations, and disputes the accuracy of the report. He has applied for several cooperative CEO/general manager positions since his termination but had difficulty finding another job due to BECi's assertion that he was terminated "for cause." *Id.* at ¶ 85.

Plaintiff filed suit in this court on December 30, 2024, raising claims of breach of employment contract, retaliation, breach of implied duty of good faith and fair dealing, and failure to timely pay wages due against BECi and defamation against board members Cryar, Sonnier, and Hickman. BECi now moves to dismiss certain claims, and the board members adopt its motion. Docs. 11, 27. Specifically, defendants argue that plaintiff fails to state a claim for (1) fraud with the particularity required by Federal Rule of Civil Procedure 9(b); (2) retaliation; and (3) defamation. Doc. 11, att. 1. Alternatively, they request a more definite statement under Federal Rule of Civil Procedure 12(e). *Id.*

## II.
## LAW & APPLICATION

### A. Legal Standards

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as

matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Meanwhile, a party may move for a more definite statement under Rule 12(e) when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably required to frame a responsive pleading[.]" Fed. R. Civ. P. 12(e). Such motions are generally disfavored. *Johnson v. BAE Sys. Land & Armaments, LP*, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012). The court should grant the motion only when the complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously attempting to answer it." *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006). When, on the other hand, a defendant complains "of matters that can be clarified and developed during discovery . . . an order directing the plaintiff to provide a more definite statement is not

warranted." *Johnson*, 2012 WL 5903780 at *4 (quoting *Brown v. Whitcraft*, 2008 WL 2066929, at *1 (N.D. Tex. May 15, 2008)).

**B. Application**

    **1. Retaliation and fraud**

Defendants first assert that plaintiff's misconduct allegations regarding the board members' alleged failure to properly record their hours does not support the elements of a fraud claim. Doc. 11, att. 1, p. 14. But plaintiff has not asserted a cause of action for fraud. Instead, that term is only used as an element plaintiff's retaliation/whistleblower claim. Accordingly, the court considers this challenge alongside defendants' separate efforts to dismiss plaintiff's retaliation claim.

Plaintiff raises his claim under the Louisiana Whistleblower Statute ("LWS"), which protects employees against reprisals from employers when they report or refuse to participate in illegal work practices. *Accardo v. La. Health Servs. & Indent. Co.*, 943 So.2d 381, 383 (La. Ct. App. 5th Cir. 2006). The statute states, in relevant part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising an employee of the violation of law:
>     (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>     (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>     (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. 23:967. A plaintiff under this statute must prove an actual violation of state law. *Accardo*, 943 So.2d at 383–84; *Puig v. Greater New Orleans Expressway Comm'n*, 772 So.2d 842, 845 (La. Ct. App. 5th Cir. 2000); *Hale v. Touro Informary*, 886 So.2d 1210,

1214 (La. Ct. App. 4th Cir. 2004); *see also Kell v. Iberville Bank*, 352 F.Supp.3d 650, 661 (E.D. La. 2018) (in contrast to federal whistleblower protections, which extend to those making good faith reports, Louisiana whistleblower statute "is only available to plaintiffs who know of an actual violation of state law.").

Plaintiff alleges that he engaged in protected activity at the January 2024 board meeting "[b]y presenting various allegations of unlawful conduct undertaken by the Cooperative's highest-ranking officials," such as:

> 1) threats made by Hickman and Cryar against Cooperative employees; 2) Hickman, Sonnier, and Teddy Welch's use of company employees for personal purposes while the employees were being paid on company time; 3) Hickman's receipt of free electricity and/or failure to pay for certain outdoor lights; and 4) various Board members' abuse of power to obtain preferential treatment of themselves or of their family members and/or selected constituents in terms of service and treatment, at the expense of other Cooperative members[.]

Doc. 1, ¶ 123. Plaintiff further alleges that these actions amount to violation of Louisiana law in the form of theft, cyberstalking, and violations of the fiduciary duties of nonprofit directors and officers under La. R.S. 12:226. *Id.* at ¶ 124. Defendants argue, however, that plaintiff's reporting of the directors' alleged misconduct cannot state a claim for retaliation because the directors were not empowered to act on behalf of BECi.

"In addition to being an actual violation of state law, the violation of state law must be a workplace act or practice that can be attributed to the employer rather than a rogue co-employee." *Sonnier v. Diversified Healthcare-Lake Charles, LLC*, 364 So.3d 1213, 1233 (La. Ct. App. 3d Cir. 2023) (citing *Ladd v. Law Enforcement Dist. for Par. of Orleans*, 350 So.3d 962 (La. Ct. App. 4th Cir. 2022)). The bad acts of a co-employee may be attributed

to the employer under the LWS if the employer condones or authorizes them.[3] *Id.*; *Richardson v. Axion Logistics, LLC*, 780 F.3d 304, 306–07 (5th Cir. 2015).

Plaintiff admits that "[t]he power to act on behalf of the Cooperative is given, not to individual Directors, but by the Directors acting in concert as a Board of Directors." Doc. 1, ¶ 23. He does not allege that the board as a whole knew of, condoned, or authorized the bad acts of individual directors before he made his report at the January 2024 board meeting. Accordingly, he has not shown that the actions he reported were attributable to BECi and therefore cannot satisfy an essential element of his claim. The court will dismiss this claim without prejudice, however, giving plaintiff leave to timely[4] amend if he can provide sufficient factual allegations to support a retaliation claim.

BECi also challenges the fraud claim based on plaintiff's failure to sufficiently plead fraud. Plaintiff alleges that Hickman's attempt to submit inflated hours on BECi's IRS Form 990 in February amounted to "actual violations of Louisiana State law(s), including but not limited to fraud[.]" Doc. 1, ¶ 126. This portion of the claim likewise fails based on plaintiff's inability to show knowledge or authorization by BECi, but the court will address the arguments with respect to the fraud allegations in the event the claim is resurrected.

---

[3] Plaintiff argues for employer liability on the basis of *respondeat superior* and analogizes this matter to *Cox v. Moses*, 2010 WL 2952716 (M.D. La. Jul. 23, 2010) (Dalby, M.J.), which handled a claim under the Louisiana Environmental Whistleblower Statute ("LEWS"). Similar to the LWS, the LEWS covers reporting only on actions attributable to "the employer or another employer with whom there is a business relationship[.]" La. R.S. 30:2027(A)(1). The court distinguished the plaintiff's report in that matter of employees' failure to properly impute data into monitoring devices from actions in other "rogue employee" cases, because the defendant's employees were performing their job duties (albeit improperly). This court, however, can find no other case extending employer liability under the LWS to all employee actions within the "course and scope" of their job functions, regardless of employer knowledge or authorization. Additionally, plaintiff's allegations of impropriety by the individual board members—including exercising undue influence, obtaining free electricity for themselves, and threatening BECi employees, appear to go beyond the scope of their duties as board members. Given the more recent holdings in *Sonnier*, *Ladd*, and *Richardson*, supra, requiring some knowledge by the employer, the undersigned does not view *Cox* as persuasive.

[4] The court will permit plaintiff 60 days to amend before this converts to a dismissal with prejudice.

Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard on fraud claims, requiring "that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). The rule is more relaxed, however, as to "conditions of the mind such as scienter: Malice, intent, knowledge and other conditions of the mind may be alleged generally." *Cargill, Inc. v. Degesch America, Inc.*, 875 F.Supp.2d 667, 675 (E.D. La. 2012) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)). But "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)" and plaintiff must instead "allege specific facts supporting an inference of fraud." *Id.*

Neither side addresses the threshold issue of whether fraud allegations within a whistleblower claim are governed by Rule 9(b) or by Rule 8's short, plain statement requirement. The court need not reach the issue, however, because plaintiff satisfies the heightened standard. The statute does not require a monetary advantage, merely an unfair one. And as plaintiff points out, Hickman, the holder of an elected board position, could make himself look harder-working and more diligent by inflating his hours. Accordingly, to the extent plaintiff can amend his whistleblower claim to satisfy the other elements, the fraud allegations are adequately pled.

Finally, defendants challenge the retaliation claim because plaintiff did not allege that he either refused to participate in or threatened to publicize any workplace practices that violated state law. Instead, they maintain, plaintiff "only disclosed his perception of alleged unlawful acts of individual Board members to the Board itself, and . . . he participated in the *private investigation* conducted by the Investigation Team." Doc. 11, att. 1, p. 20 (emphasis in original). But plaintiff has alleged that he refused to participate in Hickman's submission of inflated hours to the IRS. Additionally, even though plaintiff was placed on administrative leave before he advised members of the public of the investigation report and encouraged them to request a copy at the April 2024 board meeting, another two months passed before he participated in the investigative interview and received notice of his termination.[5] Accordingly, the alleged retaliation did not conclude until well after plaintiff revealed the alleged bad acts by BECi board members and plaintiff has satisfied this element of the claim.

2. **Defamation**

"Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name." *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004). The elements of a defamation claim are: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Id.* (internal quotations omitted).

---

[5] According to plaintiff, KPLC had first reported on the investigation in March 2024, after BECi issued a press release describing some of the findings. Doc. 1, ¶¶ 59–60, 130. It did not publish the investigation memorandum, however, until after the April board meeting, when plaintiff encouraged members of the public to request a copy of the report. *Id.* at ¶¶ 67, 70.

Page 10 of 15

Thus, in order to prevail, a plaintiff must show "that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused the plaintiff damages." *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993). "A pure statement of opinion, which is based totally on the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation." *Bussie v. Lowenthal*, 535 So.2d 378, 381 (La. 1988). Instead, "an expression of opinion is actionable only if it implies the existence of underlying facts ascertainable by a reasonable person with some degree of certainty, and the implied factual assertions are false, defamatory, made with actual malice, and concern another." *Fitzgerald v. Tucker*, 737 So.2d 706, 717 (La. 1999).

Plaintiff complains of statements posted by the individual defendants on their Facebook accounts. Particularly, Sonnier posted on December 30, 2023:

> Despite all the best efforts of 3 of your board members, JR Hickman, Tommy Cryer [sic], and myself, Doug Sonnier. . . . the other 6 board members voted to hire a new general manager all the way from Wisconsin to work part time and be paid $320,000 a year, plus an 8% appraisal bonus at the end of each year. . . . that will amount to about $25,000 . . . and I am sure he will receive all of the benefits, a credit card, and a car.
>
> And he has said over and over that we have been too generous with the employees benefit package. At every meeting he has brought up his intentions of going to the PSC for a rate hike for the members, which we do not need!!!

Doc. 1, ¶ 169. Plaintiff complains that the statements (1) that he worked part-time, (2) that he stated repeatedly that BECi had been too generous with its employee benefits package, and (3) that he regularly expressed his intent to seek a rate hike were objectively and

materially false, which Sonnier would have known as a board member.[6] *Id.* at ¶¶ 170–72. However, plaintiff has admitted that he was permitted to telework part-time. Accordingly, the statement is not false and cannot qualify as defamation.

As for the statements assigning certain positions that plaintiff maintains he never took, words are defamatory if they "convey an element of personal disgrace, dishonesty, or disrepute[.]" *Cook v. Am. Gateway Bank*, 49 So.3d 23, 32 (La. Ct. App. 1st Cir. 2010) (citing *Costello v. Hardy*, 864 So.2d 129, 140 (La. 2004)). They are also "words which tend to harm the reputation of another so as to lower the person in the estimation, to deter other from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Cooksey v. Stewart*, 938 So.2d 1206, 1211 (La. Ct. App. 2d Cir. 2006). "The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory . . . is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense." *Id.*

Sonnier made no allegations regarding plaintiff's character. While the positions he ascribed to plaintiff are apparently unpopular with BECi's constituency, they are also legitimate positions for someone in plaintiff's position to take and do not call into question his competence as manager. Accordingly, these statements likewise do not pass the threshold for a defamation claim.

---

[6] Additionally, plaintiff contends that the Facebook posts made by these board members caused him reputational harm in the community and exposed him to contempt, ridicule, and even threats from the public. *Id.* at ¶ 182. Defendants do not challenge the sufficiency of his alleged injury.

As to Cryar, plaintiff alleges that he also posted on Facebook on January 1, 2024, to complain of plaintiff's hiring. Doc. 1, ¶ 173. Specifically, Cryar wrote that he, Sonnier, and Hickman had voted against hiring plaintiff because "[n]ot only was the price too high . . . but we feel this is not the right choice for our co-op." Cryar also accused plaintiff of presenting "gag order rules" and refusing to accept the manager position unless these were adopted by the board. *Id.* Plaintiff complains that the statement on "gag order rules" is a mischaracterization and that he instead asked the board to adopt policies "[i]n *strict* accordance with Governance videos disseminated from the Federated Rural Electric Insurance Exchange," to which the board agreed in a 6-3 vote. *Id.* at ¶ 174 (emphasis in original). As with Sonnier, these statements—even if contortions of the truth—do not ascribe any bad character or dereliction of duty to plaintiff. Plaintiff further fails to demonstrate any disagreement beyond matters of opinion with Cryar's statements regarding his salary. Accordingly, these are not defamatory.

Plaintiff also complains of the following Facebook post made by Cryar on January 28, 2024:

> BECI MEMBERS AND EMPLOYEES:
>
> On January 11th our new manager told me he was considering bringing a lawsuit against me because of the post I made in December where I notified my constituents of what was going on at BECi. He made this threat in front of all 9 Board members and our Board attorney. I find this to be of public interest to let members know what we are facing at BECi. I am also bringing this public to let the new manager know that his threats don't intimate [*sic*] me. As a matter of fact, he doesn't intimidate me one bit. It makes me wonder if this is his normal way of conducting business. If any of our employees or anyone else has felt threatened by this new manager, they are welcome to call me.

Doc. 1, ¶ 178. Plaintiff asserts that he never threatened Cryar, but admits that at the January 11 board meeting he "indicated that he (Plaintiff) had been approached by an attorney who indicated that he would be willing to represent Plaintiff should Plaintiff wish to initiate litigation against Cryar for his Facebook post." *Id.* at ¶ 179. This statement could reasonably be perceived as an assertion that plaintiff "was considering bringing a lawsuit" against Cryar. Accordingly, plaintiff fails to demonstrate any falsity in this communication. The defamation claim against Cryar will be dismissed.

Finally, plaintiff alleges that Sonnier posted the following on January 26, 2024, after plaintiff sent an email entitled "Unintended Consequences" to various board members:

> Attention BECi members, from Doug Sonnier, board member in district 7. This morning I got a phone call from a member in my district, his sister had made a work order on a new service and was concerned that she had never heard anything back and he asked me to check in on it please. So, I called the BECi office, as I have done over the years. The lady I talked to was very nice, but she told me she could no longer give me any information. About an hour later I got an email from CEO, Brian, saying we would no longer be involved in any member problems . . . he would handle them from now on. He could do this because he had the majority of the board. Also, I find that he is trying everything he can to drive a wedge between the employees and the board members. At least the 3 that did not support him. I know these employees and how they feel about him, they are the best and they are underpaid, while he makes $320,000 a year being here only part time. Remember, one bad apple can spoil a whole pie. As of right now, the board members you elected are of little or no value to you. Our hands are tied until the March election in district 2 and district 4. Please help us get our COOP back under control. Please call me, Doug Sonnier, 3376392817

*Id.* at ¶ 175. JR Hickman allegedly shared this post, adopting it as his own. *Id.* at ¶ 176. Again, plaintiff contends that the assertion that he was "part time" is objectively and materially false and that as board members, Sonnier and Hickman "were both well aware that Plaintiff had been selected for, and operated as, a full-time General Manager." *Id.* at ¶

177. For the reasons stated above, these statements are not false and cannot satisfy the elements of a defamation claim. The defamation claims against all board members will therefore be dismissed, without prejudice to plaintiff's right to timely amend.

## III.
### CONCLUSION

For the reasons stated above, the Motions to Dismiss [docs. 11, 27] will be **GRANTED**. Accordingly, plaintiff's retaliation claim and his defamation claims against defendants Sonnier, Cryar, and Hickman will be **DISMISSED** without prejudice to plaintiff's right to amend within 60 days as described above. If no amendment is made within that time, the claims are automatically **DISMISSED WITH PREJUDICE**. The Motions for a More Definite Statement [docs. 11, 27] will be **DENIED AS MOOT**.

**THUS DONE AND SIGNED** in Chambers on the 25th day of March, 2025.

*[signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**